IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM L.A. CHURCH,      )<br>     Plaintiff,                           )<br>                                              )<br>v.                                           )<br>                                              )<br>COMMONWEALTH OF VIRGINIA, *et al.*, )<br>     Defendants.                       ) | Civil Action No. 7:22-cv-00519<br><br>By: Elizabeth K. Dillon<br>     United States District Judge |

**MEMORANDUM OPINION**

William L. A. Church, an inmate in the custody of the Virginia Department of Corrections and proceeding *pro se*, commenced this civil action under 42 U.S.C. § 1983. Although Church has paid the full filing fee, his complaint is nonetheless subject to screening under 28 U.S.C. § 1915A(a). Under that statute, the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The court must "dismiss the complaint, or any portion of the complaint," if it is frivolous, fails to state a claim on which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2).

Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

Applying these standards to Church's complaint, the court concludes that most of his claims and many of the defendants must be dismissed. Moreover, the complaint contains misjoined defendants and claims. For these reasons, discussed in more detail herein, the court

will dismiss Church's complaint without prejudice but give him an opportunity to file an amended complaint to correct the noted deficiencies.

## I. CHURCH'S ALLEGATIONS

Church's complaint spans almost forty-pages and names twenty-four defendants. He sues numerous members of the parole board, several persons he identifies as senior assistant attorney generals of Virginia, Virginia Department of Corrections (VDOC) officials, VDOC and medical personnel at Augusta Correctional Center (ACC), and a number of non-individual defendants, including the Commonwealth of Virginia, the Virginia Department of Corrections, the Virginia Parole Board, and the Virginia State Police.

Many of Church's allegations relate to his criminal convictions and elaborate on his theory of a vast and longstanding conspiracy against him. His allegations are not always written in complete sentences and are not always understandable. The introduction to his complaint begins:

> This action consist[s] of the FBI COINTELPRO[1] and infiltration operations. The CIA infiltration and operations. Body Doubles. The Ku Klux Klan, KKK. Gov. CI's, informants, infiltrators, plants, imposters, and rogues. Terrorist!
>
> That: Virginia DOC defendants in part Virginia Court System has the [wrong person-individual] in prison on convictions [not his own]! Plaintiff is not and was not the person individual whom was charged, indicted, convicted and sentenced to Virginia and other states and federal crimes! He was not even there! The Feds switched their informants - operatives out! Pl. identified who was! Moved for in person lineups, in person identification, which still has not been conducted! Covered up by defendants. Ignored and disregarded! Pl. fingerprints match over 19 gov. CI/s! Whom are identified! Def. fail to intervene or to take immediate action!

(Compl. 2, Dkt. No. 1.)

---

[1] The court believes this is a reference to the FBI's Counterintelligence Program.

In a section labeled jurisdiction, Church cites to a number of different statutes and constitutional amendments, including the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution, 28 U.S.C. § 1331, and 42 U.S.C. §§ 1981, 1983, 1997, and 2000.  (Compl. 3.)  He also refers to the Americans with Disabilities Act and *Carlson v. Green*, 446 U.S. 14 (1980).  *Id.*

His factual allegations span decades, are somewhat confusing, and contain many fanciful allegations.  It appears that he is accusing government agencies (including the FBI and CIA) of committing crimes using his name or body doubles, and that they "functioned" as him in the United States, Asia, and Europe, as part of clandestine operations.  (Compl. 7.)  He claims that he was recruited as an orphan and that numerous other people, including "Russians, Arabians, Iranians, Nationalists, and Terrorists" all committed crimes using his name and social security number.  (*Id.*)

He claims that he "is and at all times was assessed and assigned to [government] and military special operations, special forces, intelligence officer, ranger, airborne, USMC, etc." and to an "infiltration and destruction team." (*Id.*)  He references serving in Vietnam.  He also claims that he was given a social security number, which is valid, but it "does not match the individual" and that, until 1973, he "did not exist!" (*Id.* at 8.)

He alleges that various crimes were committed in Chattanooga, Tennessee, in the 1970s and 1980s "by FBI and CIA informants (including KKK shootings, gay bar attacks, [breaking & enterings], and assaults." *Id.*   He claims that the perpetrators used his name and social security number to commit those crimes, but he was not even there.

Discussing the early 1980s, he refers to a girlfriend who was pregnant with his son, and states that an FBI informant "infiltrated" him again and "somehow married [his] girlfriend . . .

3

while [he] was deployed to Asia [or] Europe[.]" *Id.* This individual also had tried to kill the girlfriend and her family.

Also in the 1980s, several different individuals were impersonating him and spent time committed to the VA Hospital. They also committed sex crimes, for which he was convicted even though they were not committed by him. Again, he contends that he was deployed overseas at the time these individuals were impersonating him. (*See id.* at 9.)

He claims that from 1996 to the present, he has repeatedly reported to defendants that they had the wrong person in custody. He claims that he is not the individual who was arrested, charged, indicted, tried, or sentenced on any of the Virginia crimes or charges. He asks for an "in person line-up" and identification to prove his innocence, and claims that defendants are disregarding his claims and allegations about who really committed his offenses. (*Id.* at 9–10.)

In a separate section where he lists claims against each defendant, he advances different claims, at least some of which appear unrelated to his allegations about his crimes of conviction being committed by others impersonating him. These include:

- a claim that his prison job was taken from him because of his sex convictions;
- a claim that defendants broke promises about where he would be housed;
- claims that his medical and dental needs were ignored or not properly treated; and
- claims that he was denied access to the courts because the institutional attorneys or others would not assist him with legal-related requests.

(*See generally* Compl.)

## II.  DISCUSSION

It appears that Church is attempting to bring claims against state actors pursuant to 42 U.S.C. § 1983.[2] As noted, he asserts separate claims against each defendant. As the court

---

[2] Although he cites to *Carlson v. Green*, 446 U.S. 14 (1980), which would indicate that he is seeking a remedy similar to that recognized in *Bivens v. Six Unknown Named Agents of*

discusses next, here are a number of problems with Church's claims and his complaint.

### A. Claims Challenging His Convictions

The crux of Church's complaint (and most of his claims) are based on his contention that he has been wrongfully convicted of various crimes. It appears that Church previously raised the same claims before another court. *See Church v. U.S. Gov't*, No. 3:07CV129-HEH, 2008 WL 5704482, at *2 (E.D. Va. Jan. 29, 2008).

As the report and recommendation of the magistrate judge in that case summarized,

> Church has a long history of submitting frivolous complaints. Much of Church's prior litigation involves false tales of service for various military and governmental agencies and conspiracies to unlawfully detain him in prison. *See, e.g., Church v. Att'y Gen. of Va.,* 125 F.3d 210, 211 (4th Cir.1997); *Church v. West,* No. 97–835, 1999 WL 55506, at *1 (Vet. App. Jan. 29, 1999) (noting that Church falsely claims to have served in Vietnam when he was fourteen).

*Id.* In that case, the magistrate judge recommended "that Church's present incredible claims of byzantine conspiracy theories and government manipulations be DISMISSED as factually frivolous." *See id.* The presiding U.S. District Judge adopted that recommendation over Church's objections. *See id.* at *4 (agreeing with the magistrate judge "that the frivolous nature of Church's claims is amply demonstrated by his prior litigation history and the allegations in the present complaint"). Most of the claims in this case, which are extremely similar—if not identical—are subject to dismissal as frivolous for the same reasons.

Moreover, challenges to a state inmate's conviction or incarceration are properly brought in a habeas action under 28 U.S.C. § 2254, not a civil rights action. And, as the Eastern District noted in *Church*, any claims for civil damages based on Church's allegedly false imprisonment are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Church*, 2008 WL 5704482, at * 3.

---

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971), he has not named any federal officials or entities as defendants.

### B. Claims Against Entities or Immune Individuals

The court further notes that claims against many of the defendants must be dismissed either because they are not proper defendants or because the defendants have immunity from suit for the alleged actions. For example, the Commonwealth, the VDOC, the Virginia Parole Board, and the Virginia State Police are not proper defendants to a § 1983 action. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). And the claims against the prosecuting attorneys in his criminal cases, which arise from actions they took that are "intimately associated with the judicial phase of the criminal process," are barred by absolute prosecutorial immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *see also Nero v. Mosby*, 890 F.3d 106, 117–18 (4th Cir.), *cert. denied*, 139 S. Ct. 490 (2018) (discussing the purposes of prosecutorial immunity and circumstances in which it applies).

### C. Misjoined Claims

Some of the other claims in his complaint—such as his claims for the denial of medical or dental care or a claim that he was denied a right of access to the courts—may be properly brought in a civil rights action pursuant to 42 U.S.C. § 1983.³ But as his complaint currently stands, it contains misjoined claims and defendants. That is, his complaint includes unrelated events brought against more than one defendant, and he is not permitted to bring all of these claims in a single lawsuit.

---

³ By noting that these are typical civil rights claims, the court is not making any determination that Church has included sufficient allegations to state a valid claim against any defendant. Because the court is directing the filing of an amended complaint, it will instead await that amended complaint before screening these claims. Indeed, as of right now, the court does not know which claim or claims Church will elect to pursue. The court notes, though, that in order to state a constitutional claim that he was denied access to the courts, a plaintiff must allege facts showing that the challenged action has actually "hindered his efforts to pursue" a nonfrivolous legal claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that to a plaintiff must identify in his complaint a "nonfrivolous," "arguable" legal claim that was lost, along with the potential remedy that claim sought to recover).

Federal Rule of Civil Procedure 18(a) only allows a plaintiff to join "as many claims as it has against *an opposing party*." Fed. R. Civ. P. 18(a) (emphasis added). Rule 20 allows the joinder of several defendants *only* if the claims arose out of the same transaction or occurrence, or series thereof, *and* contain a question of fact or law common to all the defendants. Fed. R. Civ. P. 20(a)(2). Thus, if the claims arise out of different transactions and do not involve all defendants, joinder of the claims against various defendants in one lawsuit should not be allowed. *Riddick v. Dep't of Corr.*, No. 7:17CV00268, 2017 WL 6599007, at *1 (W.D. Va. Dec. 26, 2017) ("[A] plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question.") (citation omitted). "These procedural rules apply with equal force to *pro se* prisoner cases." *Id.*

In addition, to allow Church to pay one filing fee, yet join disparate legal claims against multiple parties concerning different events and different legal issues, would frustrate the purposes and limitations set forth in the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq.* PLRA restrictions on prisoner-filed civil actions include: requiring full payment of the filing fee in any civil action or appeal submitted by a prisoner—through prepayment or through partial payments withheld from the inmate's trust account; authorization of court review and summary disposition of any claim or action that is frivolous or malicious, fails to state a valid claim upon which relief can be granted, or seeks relief against persons immune from such relief; and a "three strike" provision, which prevents a prisoner from proceeding without prepayment of the filing fee if the prisoner's litigation in federal court includes three or more cases or appeals dismissed as frivolous, malicious, or as stating no claim for relief. *See generally* 28 U.S.C. §§ 1915, 1915A. "Congress enacted the PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil

claims." *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997). Compliance with the joinder rules thus "prevents prisoners from 'dodging' the fee obligation and '3-strikes' provision of the PLRA." *Riddick*, 2017 WL 6599007, at *2 (citation omitted). "[T]o allow [plaintiff] to essentially package several lawsuits into one complaint would undercut the PLRA's three-strikes provision and its filing fee requirement." *Id.*

Because of the misjoinder—and because most of his claims are being dismissed—the court will give Church the opportunity to file an amended complaint in this case that complies with the applicable joinder rules.

**D. Church's Motion for Service**

Church also has filed a motion in which he requests the court to serve defendants for him. (Dkt. No. 3.) In it, he argues that the combined circumstances of his age, health, and a lack of family would make it difficult for him to effect service.

At this point, and because the court has directed the filing of an amended complaint, his motion is premature. Again, the court does not even know which defendants will remain after Church narrows his claims. In any event, because he has paid the full filing fee and is not proceeding *in forma pauperis*, Church is responsible for serving any defendants not dismissed by the court after screening pursuant to 28 U.S.C. § 1915A(a). For these reasons, his motion to serve will be denied without prejudice.

III. CONCLUSION

For the foregoing reasons, the court will summarily dismiss Church's complaint, without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), because most of his claims fail to state a claim for which relief may be granted and are frivolous. As to any claims or defendants not subject to dismissal, the complaint violates the rules concerning joinder. Thus, the court will give Church an opportunity to file an amended complaint within thirty days, but the amended

complaint may not contain any claims challenging his convictions and must comply with the joinder rules as set forth in Federal Rules of Civil Procedure 18 and 20. Additional instructions regarding any amended complaint will be set forth in the court's order. Lastly, his motion to serve (Dkt. No. 3) will be denied.

    An appropriate order will be entered.

    Entered: October 6, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge